NATIVIDAD SANTIAGO, demandante y apelante, *v.* PHILLIP EL-KOURY, demandado y apelado.

Núm. 7663.—*Sometido:* Marzo 13, 1940. *Resuelto:* Marzo 19, 1940.

---

* NOTA: Véase el prefacio.

*E. H. F. Dottin*, abogado de la apelante; *Joaquín Vendrell*, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Éste es un pleito en que se reclaman daños y perjuicios por injuria y calumnia. La cuestión envuelta es una de simple apreciación de prueba. Si los hechos ocurrieron conforme los relata la demandante, indudablemente su demanda debe prosperar, siendo entonces de aplicación la jurisprudencia establecida en el caso de *Casanova* v. *González Padín Co.*, 47 D.P.R. 488. Si por el contrario no cometió error manifiesto la corte inferior al dar crédito a la versión que de lo ocurrido hace el demandado, no es de aplicación el citado caso y procede desestimar el recurso.

La sentencia que desestimó la demanda está basada en una opinión en la que concisa pero claramente el juez inferior expone la teoría de una y otra parte y las razones que tuvo para dirimir el conflicto de la prueba a favor del demandado. La opinión dice así:

"Se reclaman en este pleito $3,000 por vía de daños y perjuicios causados a la demandante por haber sido difamada maliciosamente por empleados del demandado al imputarle la comisión de un delito de robo. Se alega en la demanda que tal imputación le causó gran conmoción nerviosa y enfermedad. La prueba fué sumamente breve. Las partes la sometieron sin argumento. Y después de un estudio de toda la cuestión, decimos: éste es el caso tipo de prueba contradictoria. La demandante y sus testigos, sin discrepancia alguna, establecieron los hechos, sobre los que descansa la teoría de la acción, en la siguiente forma: el día 19 de junio de 1935, entre las 2 y las 3 de la tarde, la demandante visitó el establecimiento 'La Esperanza', situado en el núm. 38 de la calle de Salvador Brau de esta Capital y propiedad del demandado. El establecimiento se dedica a lo que conocemos como una tienda de 5 y 10. El propósito de la demandante al hacer tal visita era comprar medias de mujer. Al acercarse al despacho donde se exhiben tales artículos, la demandante puso su cartera sobre el mostrador. Examinó las medias. No le gustaron. Recogió su cartera para marcharse. Entonces la empleada que atiende al despacho la requirió para que le

entregara la cartera que había cogido porque esa cartera era de otra persona que allí la había dejado y por tal actuación la demandante quería robársela. Protestó ésta. Se llamó a un empleado de mayor categoría y éste inquirió de la demandante el contenido de la cartera. Aquélla expuso los artículos que podían ser hallados en ésta, y entonces, al cerciorarse el empleado de la veracidad de las manifestaciones de la demandante, le devolvió la cartera. El incidente atrajo la atención de otros clientes que a la sazón estaban en la tienda. La imputación de robo hecha por la empleada del demandado fué pública y en voz alta. Tal cosa afectó el sistema nervioso de la demandante tan profundamente que el mismo día se fué para Naguabo y al día siguiente su hermano la trajo al pueblo de Juncos. Allí fué examinada por un médico y quedó recluída en la clínica particular de este facultativo por espacio de nueve días. Sufría una postración nerviosa de tal magnitud que estuvo bajo inmediato e incesante cuidado profesional. Ha quedado enferma de los nervios.

"Los testigos del demandado dan otra versión completamente distinta. Héla aquí: la demandante llegó ese día al departamento donde venden artículos para mujer en la tienda del demandado y allí solicitó unas medias. Para examinarlas dejó sobre el mostrador su cartera. No satisfecha con los artículos vistos, no realizó compra alguna. Se marchó del sitio; pero dejó olvidada su cartera sobre el mostrador. La empleada recogió la cartera y la envió a la oficina de la tienda. Minutos después llegó la demandante en busca del objeto perdido. La empleada entonces la envió donde el encargado de entregar los objetos encontrados en la tienda. Después de identificada la cartera por la demandante, la misma le fué entregada y se marchó. No pasó más nada.

"Si la primera de las versiones es cierta, entonces tenemos que aplicar la doctrina del caso de *Casanova* v. *González Padín Co.*, 47 D.P.R. 488; pero después de un estudio detenido y de un análisis razonable y justo de toda la evidencia, y examinada ésta desde todos sus puntos de vista, considerado el carácter de los testigos, la veracidad de sus testimonios y la naturaleza de la acción, llegamos a una conclusión: a que debemos dar crédito a la prueba del demandado. No importa que sus testigos sean sus propios empleados. No tiene otros. La veracidad de sus testimonios, su forma de declarar, y la seguridad de sus manifestaciones, nos dan mayor seguridad y plena confianza en el análisis que hemos hecho de toda la prueba. Las cosas no pudieron ocurrir, porque no suceden así en la vida, como dicen la demandante y sus testigos que ocurrieron.

Es inadmisible que los empleados del demandado pudieran actuar en forma tan inconsulta como alega la prueba de la demandante que actuaron. La experiencia, que es la gran maestra de la vida, nos dice que es absurdo pensar que un empleado pueda conducirse en forma tan groseramente estúpida para con un cliente y hacer imputaciones tan fuera de lugar. Los testigos presenciales de la demandante en contraste con los del demandado, no han podido llevar a nuestro ánimo aquella convicción, aquella certeza moral y aquella tranquilidad de conciencia que llevan siempre al ánimo del juzgador los testigos que dicen la verdad y nada más que la verdad.

"El abogado de la demandante explicó desde la silla testifical su actuación.

"En conclusión, los hechos de este caso no pueden calcarse en los de Casanova, supra. Son distintos. No es, pues, de aplicación la doctrina allí establecida.

"Resolvemos que la preponderancia de la prueba está a favor del demandado. Se desestima la demanda absolviéndole de la misma. Se imponen las costas a la actora."

El abogado de la apelante, tanto en su alegato escrito como en su brillante informe oral el día de la vista, al sostener que el juez sentenciador cometió manifiesto error en la apreciación de la prueba, pone gran énfasis en las siguientes frases de la opinión transcrita:

"Las cosas no pudieron ocurrir, porque no suceden así en la vida, como dicen la demandante y sus testigos que ocurrieron. Es inadmisible que los empleados del demandado pudieran actuar en forma tan inconsulta como alega la prueba de la demandante que actuaron. La experiencia, que es la gran maestra de la vida, nos dice que es absurdo pensar que un empleado pueda conducirse en forma tan groseramente estúpida para con un cliente y hacer imputaciones tan fuera de lugar."

En verdad, al así expresarse, el juez no midió el alcance de sus palabras. La teoría de la demandante y sus testigos no es físicamente imposible y por lo tanto no es exacto decir que los hechos no pudieron suceder como ellos los relatan. El hecho de que los hombres ordinariamente actúen en determinada forma no implica que en ocasiones no puedan actuar de manera distinta. La idea que sin duda pasó en aquellos

momentos por la mente del juez fué la de que la teoría del demandado era más probable que la de la demandante, por estar más en armonía con la forma en que ordinariamente suceden las cosas, y siendo contradictoria la prueba, esta circunstancia, unida a las otras que dice haber considerado en el estudio y análisis que hiciera de toda la evidencia, determinó que al pesar mentalmente la prueba toda, la balanza se inclinase a favor del demandado.

Es raro que la dependiente, una señorita, tratase de ladrona a la demandante, una señora que indudablemente tendrá el aspecto de ser una persona de consideración, por el solo hecho de tratar de coger la cartera que dice había puesto sobre el mostrador. Sería probable que ese lenguaje tan irrespetuoso lo usase tratándose de una persona de quien se supusiese en el establecimiento que acostumbraba robar, pero no tratándose de una señora desconocida. Mucho más improbable es que el jefe auxiliar del dueño del establecimiento, en quien debemos suponer por razón de su cargo alguna educación y tacto, gratuitamente repitiera a una señora la misma ofensa.

Arguye la apelante que en el caso de *Casanova*, supra, los demandados fueron más lejos aún que el demandado en éste. Así es en efecto; pero fué el caso de *Casanova* el primero y hasta ahora el único de esa índole que registran nuestras "Decisiones"; tuvo como éste su origen en un importante establecimiento de esta ciudad, y culminó en una sentencia contra la demandada por la respetable suma de $5,000, lo que, lejos de estimular la repetición de casos como éste, ha constituído una lección práctica del tacto y circunspección que deben adoptarse en situaciones análogas. Probablemente el demandado y sus empleados conocían el caso de *Casanova* y sus consecuencias, por haber tenido gran publicidad la sentencia dictada y especialmente por afectar al comercio, y conociéndolo, es de presumir que no cometerían el error que en aquél cometió la demandada, circunstancia

ésta que probablemente también consideró el juez inferior al dirimir el conflicto de la evidencia en este caso.

*Por lo expuesto, procede desestimar el recurso y confirmar la sentencia apelada.*